UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CARLENE GRAHAM                                                          PLAINTIFF

V.                                                    CIVIL ACTION NO. 4:07CV164 DPJ-JCS

METROPOLITAN LIFE INSURANCE COMPANY                                   DEFENDANT

ORDER

This life insurance dispute is before the Court on Defendant Metropolitan Life Insurance Company's motion for summary judgment [41]. Plaintiff Carlene Graham has responded to the motion and filed a motion to strike the affidavit of Thomas F. Presite [45]. The Court, having considered the parties' submissions and applicable law, finds that Defendant's motion should be granted. Plaintiff's motion to strike is denied.

**I.     Facts and Procedural History**

Robert Graham, the late husband of Plaintiff Carlene Graham, was employed by Georgia-Pacific Corporation ("Georgia-Pacific") until his retirement in 2002.[1] As a retired Georgia-Pacific employee, Robert Graham was provided with life insurance under Georgia-Pacific's LifeChoices benefits program. Beginning in 2002, Georgia-Pacific funded the life and accidental death portion of the program through the purchase of Defendant Metropolitan Life Insurance Corporation's ("MetLife") Group Term Life & Accident Insurance Policy.[2]

According to the policy descriptions, Georgia-Pacific serves as the plan sponsor, administrator, and record keeper. Georgia-Pacific retained Sykes HealthPlan Service Bureau,

---

[1] Plaintiff initially worked for Fort James Corporation ("Fort James"), which was subsumed by Georgia-Pacific in 2000.

[2] The life and accidental benefits plan was previously funded by Aetna.

Inc. ("SHPS") as a third-party administrator to maintain eligibility, enrollment, and coverage amount records for participating employees. Additionally, Georgia-Pacific designated MetLife as the benefits claims administrator for life insurance claims. Because MetLife does not keep records of the coverage amounts for employees, it relies on Georgia-Pacific or SHPS for information regarding the amount of coverage for each employee and then processes the claim.

After Plaintiff's husband died in February 2005, she submitted the appropriate documentation to collect his benefits. In April 2005, MetLife received the documentation necessary to process Plaintiff's claim from SHPS, which included an employer's statement from Georgia-Pacific indicating that Plaintiff's husband had $8,000 in life insurance coverage. MetLife processed a claim payment to Plaintiff in May 2005 for $8,107.84, representing her husband's benefits plus interest.

In June 2005, Plaintiff contacted MetLife and claimed that Sherry Arrington, a Georgia-Pacific employee, had previously told her that she was entitled to $45,000 in benefits.[3] Throughout June, MetLife claims administrators communicated with Arrington and employees at SHPS to determine whether Plaintiff was entitled to the additional funds. According to the administrative record, Arrington informed MetLife that she told Plaintiff in writing that "*if* Mr. Graham was approved for waiver of premium that he would be allowed to keep his full amount of $48,000." Defendant's Motion [42] at Exh. 3F (emphasis added). Such a waiver allows continued coverage without premium if the covered employee becomes disabled. Whether such coverage was obtained is the crucial question before the Court.

---

[3] There is some dispute in the record whether the amount was $45,000 or $48,000. Plaintiff's affidavit claims that it was $45,000. *See* Graham Aff. at ¶2. The claims file indicates that she sought $48,000. *See generally* Defendant's Motion [42] at Exh. 3F.

The record reflects that MetLife's search produced no evidence of premium waiver coverage, and MetLife so informed Plaintiff in writing on November 1, 2005. MetLife did, however, invite Plaintiff to submit additional evidence, and in July 2006 Plaintiff sent MetLife a February 1999 Aetna Group Disability application that appears to have been fully completed. After again searching its records and contacting Georgia-Pacific and Aetna representatives, MetLife found no evidence that the application had been submitted to Aetna, or approved by Aetna, and no proof that any such obligations were assumed by MetLife some three years later. MetLife therefore closed the claim and told Plaintiff over the telephone that "they had no record" to support the claim. Graham Aff. ¶5.

Plaintiff filed the current action in the Circuit Court of Wayne County, Mississippi, asserting state law claims for breach of the insurance contract. MetLife timely removed the action to this Court on the ground that Plaintiff's claims are governed by the Employment Retirement Income Security Act of 1974 (ERISA). Plaintiff subsequently amended her claim to add claims under ERISA's civil suit provisions. Defendant has now moved for summary judgment, arguing that Plaintiff's state law claims are preempted by ERISA and her ERISA claims are meritless.

## II.     Defendant's Motion for Summary Judgment

### A.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient

showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

B.  <u>Defendant's Motion</u>[4]

1.  *Whether the Georgia Pacific Policy is a Plan*

Plaintiff contends that her husband's life insurance policy is not an ERISA plan, thus defeating MetLife's preemption arguments. As Defendant notes, Plaintiff actually states in her

---

[4]Plaintiff's memorandum includes certain arguments that are either baseless or conclusory. The Court has considered and rejected all of Plaintiff's arguments, but will more specifically address those discussed herein.

response that her benefits arise "from a Plan, allegedly administered by Georgia Pacific, not an insurance policy issued by Aetna." Plaintiff's Response at 8.[5] Regardless, the Court will address Plaintiff's claim that the subject plan was not an ERISA plan.

To qualify as an ERISA plan, the arrangement must be "(1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer with the intent to benefit employees." *Shearer v. Sw. Serv. Life Ins. Co*. 516 F.3d 276, 279 (5th Cir. 2008). Plaintiff never directly addressed the second and third requirements, focusing instead on the first.[6]

Under the first prong of the analysis, "*a court* must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th Cir. 1991) (emphasis added) (citations and quotations omitted); *see also Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1991) (citation omitted). Applying this standard, the Fifth Circuit Court of Appeals found an employee's policy was a plan for purposes of ERISA when:

> The benefits provided by the [employer's] plan were described in the [insurer's] policy; the beneficiaries were the [employer's] employees and their dependents; [the employer] paid the entire premiums for coverage of its employees and a portion of the premiums for coverage of the dependents; and the procedures for recovering benefits were explained in the policy manual.

---

[5] Plaintiff also appears to argue that the plan was not in existence during the policy period, and therefore not a plan for purposes of ERISA. If the plan was not in existence, then Plaintiff would have no claim against MetLife, as there is no evidence of any other policy in Mr. Graham's name.

[6] For the reasons stated in Defendant's memorandum, the Court nevertheless finds that these requirements have been met.

5

*McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 236 (5th Cir. 1995). The Court's focus in making such a determination is "on the employer and its involvement with the plan." *Id.*

Turning to the Georgia-Pacific policy, the Court finds that there was a plan for purposes of ERISA. Other than offering unsupported legalistic arguments of counsel, Plaintiff's primary contention seems to be that the policy cannot meet ERISA's guidelines because MetLife's 30(b)(6) deponent failed to explain Georgia-Pacific and SHPS's procedures for payment of premiums and claims handling. However, with respect to premiums, the deponent testified that she was "not involved in that," and the MetLife employee's unfamiliarity with Georgia-Pacific's policies does not directly address the Court's inquiry. Plaintiff's Response at 11. In this case, a reasonable person could ascertain from the plan summary that: 1) the benefits are funds payable upon the death of the insured; 2) the intended beneficiaries were Georgia-Pacific employees and their named beneficiaries; 3) the funding of the plan; and 4) benefits would be received by submitting claims to MetLife, Georgia Pacific's claims administrator.[7] Defendant's Motion [42] at Exh. 3; *see McDonald*, 60 F.3d at 236. Accordingly, the life insurance policy was a plan governed by ERISA.

C. <u>State Law Claims</u>

Plaintiff does not dispute that her claims are preempted if her husband's insurance policy is an ERISA plan. Having determined that the life insurance policy is an ERISA plan, Plaintiff's state law claims are preempted by federal law. *See* 29 U.S.C. § 1144(a) (explaining that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any

---

[7] The parties dispute which plan year applies, but each of the plans meet the requirements discussed above.

employee benefit plan"); *Crowell v. Shell Oil Co.*, 541 F.3d 295, 303 (5th Cir. 2008).

Defendant's motion for summary judgment is granted as to Plaintiff's state law claims.

  D. <u>ERISA Claims</u>

Plaintiff alternatively seeks damages under 29 U.S.C. § 1132(a)(1)(B) for Defendant's refusal to pay $45,000 in benefits. Plaintiff bears the burden of proving that she is entitled to the claimed benefits. *Hedgepeth v. Blue Cross and Blue Shield of Mich.*, No. 1:05CV142-SA-SAA, 2008 WL 2954935, at *2 (N.D. Miss. July 29, 2008) (citing *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 (5th Cir. 1993)). Defendant contends that Plaintiff has failed to meet her burden.

  1. *Standard of Review*

Unless the terms of the plan grant the administrator discretion to construe the terms of the plan, an administrator's decision to deny benefits is reviewed *de novo*. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). "Regardless of the administrator's ultimate authority to determine benefit eligibility, however, factual determinations made by the administrator during the course of a benefits review will be rejected only upon the showing of an abuse of discretion." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).

The policy behind this rule was well stated in *Pierre v. Connecticut General Life Insurance Co./Life Insurance Co. of North America*,

> The courts simply cannot supplant plan administrators, through de novo review, as resolvers of mundane and routine fact disputes. *See Anderson v. Bessemer City*, 470 U.S. at 574-75, 105 S.Ct. at 1512 ("Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources" ). Considerations of expediency therefore support deference to factual determinations made in the administration of the plan. Otherwise, federal trials

> are encouraged in the vast numbers of claims that are filed in the thousands of ERISA plans throughout this country.

932 F.2d 1552, 1559 (5th Cir. 1991). The denial in the present case turned on MetLife's conclusion that Mr. Graham never obtained the disputed coverage. This was a purely factual question that required no interpretation of the terms of the policy. *See Pierre,* 932 F.2d at 1557 (explaining difference between factual questions for which abuse of discretion applies and questions involving interpretation of the plan for which *de novo* review applies absent grant of discretion). Accordingly, the abuse of discretion standard applies.

Under the abuse of discretion standard, "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Finally, in conducting this review, the district court is constrained to the evidence in the administrative record. *Vega,* 188 F.3d at 299 (also explaining scope of administrative record).

    2.    *Benefits and Penalties*

Plaintiff supports her claim for additional benefits with three documents: 1) the Aetna group disability premium waiver form filled out by her husband in 1999 when he worked for Fort James; 2) Plaintiff's own affidavit statement that Sherry Arrington, a Georgia-Pacific employee, informed her that she was entitled to $45,000 in life insurance benefits plus interest; and 3) a March 24, 2005 letter from SHPS regarding premiums. The Court finds that these documents fail to demonstrate that MetLife abused its discretion.

First, the group disability application merely demonstrates that Plaintiff's husband and his employer filled out an application. There is no proof that the application was properly submitted; that it was approved by Aetna; or that MetLife assumed Aetna's obligations three years later. Significantly, Defendant was not the repository for the relevant documents, and the administrative record clearly demonstrates MetLife's substantial efforts to determine whether Aetna, Georgia-Pacific or SHPS possessed documentation of coverage. Ultimately, Defendant was informed by those entities that no such documentation existed.

Second, Plaintiff claims that Arriginton informed her that the policy "provided $45,000 in coverage." Graham Aff. ¶3. However, the record plainly demonstrates that MetLife investigated the statement Plaintiff attributed to Arrington and communicated directly with Arrington for clarification. Arrington provided the following response:

> What Mrs. Graham was told in writing is that *if* Mr. Graham was approved for waiver of premium that he would be allowed to keep his full amount of $48,000. She has failed to come up with any type of letter from Cigna or Aetna approving the waiver of premium. I do see on file where the paperwork for the waiver was completed but I do not have an approval and Aetna nor Cigna can find a record on Mr. Graham. . . . We are not involved in the waivers other than filling out the employer's part of the paperwork, then we have no way of knowing if they mail it in to the company or not.

Defendant's Motion [42] at Exh. 3F (emphasis added). Arrington's response was consistent with Defendant's other efforts to determine whether there was any record of this coverage. Defendant's conclusion was not an abuse of discretion.

Finally, Plaintiff's response references a March 24, 2005 letter from SHPS regarding coverage.[8] Although the letter is attached to Plaintiff's affidavit, her response offers only the

---

[8] It is not clear whether the letter is part of the administrative record, but for purposes of this opinion, the Court will assume that it was.

9

cryptic statement that the letter proves Georgia Pacific continued to pay life insurance premiums to MetLife. What is not clear, however, is whether this letter references the disputed coverage. Moreover, the Court cannot say that Defendant abused its discretion in finding that Mr. Graham was not covered for the additional benefits when the entities from which conformation would have to come informed MetLife that no coverage existed. Substantial evidence supported MetLife's determination, and the Court finds that it was not arbitrary and capricious. Accordingly, Defendant's motion should be granted.[9]

  E.  Attorney's Fees

For this same reason, the Court also grants Defendant's motion with respect to Plaintiff's claim for attorney's fees and costs pursuant 29 U.S.C. § 1132(g)(1). Plaintiff did not respond to this portion of the motion, but the Court finds the claim lacking under the statute and based on the factors found in *Pitts ex. rel. Pitts v. American Security Life Insurance Co.*, 931 F.2d 351, 358 (5th Cir. 1991).

## III. Plaintiff's Motion to Strike

Plaintiff has moved the Court to strike the Affidavit of Thomas F. Presite, which MetLife submitted in support of its motion for summary judgment, on the ground that Presite was not identified in MetLife's initial disclosures. Defendant argues that reference to the administrative record in an ERISA matter is sufficient for purposes of Rule 26(a)(1) and, in the alternative,

---

[9]Plaintiff states in her memorandum that the record contains other "irrefutable proof that she was entitled to at least $45,000 in insurance proceeds from MetLife," but she fails to identify that proof. Plaintiff's Response at 14. "The nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of USPS*, No. 07-10426, 2008 WL 64673, at *3 (5th Cir. Jan. 7, 2008) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994)).

10

contends that any deficiency in its disclosures was harmless. In rebuttal, Plaintiff asserts that MetLife's failure to name Presite in its initial disclosures prevented her from discovering MetLife's theory of how ERISA applied to her claims.

If a party fails "to identify a witness as required by Rule 26(e) . . . the party is not allowed to use that . . . witness to supply evidence on a motion" unless the failure is harmless. FED. R. CIV. P. 37(c)(1). In considering whether a violation of Rule 26 is harmless, the court considers four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of allowing the evidence to be used at trial; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the evidence. FED. R. CIV. P. 26(a), 37(c)(1); *United States v. $9,041,598.68*, 163 F.3d 238 (5th Cir. 1998).

The Court finds MetLife's failure to identify Presite in pre-discovery disclosures was harmless. Regardless of the merits of MetLife's explanation, Plaintiff suffered no prejudice because, contrary to Plaintiff's assertion, MetLife specifically identified Presite in its Response to Plaintiff's Interrogatory No. 1, which Defendant served on May 6, 2008. The discovery deadline was September 30, giving Plaintiff more than four months to notice Presite's deposition or request additional discovery. *See Pratt v. Pharmnet*, No. 3:04CV208-D-A, 2006 WL 2943296, at *3 (N.D. Miss. Oct. 13, 2006) (finding failure to list witness harmless when "[i]t [was] undisputed that [witness] was listed by the defendants during discovery").

Furthermore, Plaintiff does not dispute the validity of any of the documents attached to Presite's affidavit. From the Court's perspective, the affidavit served no purpose other than to authenticate the attached documents. *See In re Mahoney*, 368 B.R. 579, 590 (Bankr. W. D. Tex. 2007) ("Regarding the affidavits' function of authenticating the exhibits as business records, the

failure of the defendant to disclose the identities of the affiants is harmless."). Accordingly, the Court finds MetLife's failure to name Presite in its initial disclosures harmless. Plaintiff's motion to strike is denied.

## IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is granted. Plaintiff's motion to strike is denied. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 8th day of January, 2009.

                                     s/ *Daniel P. Jordan III*
                                     UNITED STATES DISTRICT JUDGE